

**Dated: August 08, 2017.**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 15-70104-TMD |
| AMERICAN STANDARD ENERGY, | § | |
| CORP., *et al.*, | § | |
|     Jointly Administered Debtors. | § | Chapter 11 |

| | | |
|---|---|---|
| AMERICAN STANDARD ENERGY, | § | |
| CORP., A NEVADA CORP., and | § | |
| AMERICAN STANDARD ENERGY | § | |
| CORP., A DELAWARE CORP., | § | |
|     Plaintiffs, | § | |
| | § | Adv. Proc. No. 17-07002-TMD |
| v. | § | |
| | § | |
| GERONIMO HOLDING CORPORATION, | § | |
| RANDALL CAPPS, and XOG | § | |
| OPERATING, LLC, | § | |
|     Defendants. | § | |

**<u>MEMORANDUM OPINION</u>**

1

The plaintiffs[1] here seek, in part, a judgment declaring that their bankruptcy discharge injunction has been violated; in response, the defendants[2] filed a motion to dismiss on the theory that state court litigation to establish that term assignments of oil and gas leases have terminated does not involve the assertion of a "claim," and therefore does not violate the discharge injunction.[3]

## I. BACKGROUND[4]

### A. The initial term assignments.

In February of 2012, Geronimo, which is owned by Randall Capps and XOG Operating, LLC, agreed to convey certain leasehold interests to ASEN in several states, including five leases referred to as the Crockett County leases.[5] Geronimo conveyed the five leases through five term lease assignments, which were recorded in March of 2012, but made effective as of December 1, 2011.[6] The original primary term of each of the term lease assignments stated:

---

[1] The plaintiffs, American Standard Energy Corp., a Nevada Corp. and American Standard Energy Corp., a Delaware Corp., will collectively be referred to as "ASEN."

[2] The defendants, Geronimo Holding Corporation, Randall Capps, and XOG Operating, LLC, will collectively be referred to as "Geronimo."

[3] Geronimo raised this argument in the Motion to Dismiss [ECF No. 17] filed in response to the original complaint. ASEN then filed its First Amended Complaint [ECF No. 45], keeping their claim of violation of the discharge injunction as cause of action number three. Although Geronimo filed a subsequent Motion to Dismiss that only sought dismissal of causes of action four and five of the First Amended Complaint [ECF No. 47] and did not discuss the discharge injunction issue, the Court will treat that motion as supplemental and rule on the request to dismiss the discharge injunction violation contained in the original motion to dismiss.

[4] These facts are as stated in the First Amended Complaint, and for purposes of this motion, are accepted as true. *In re UPH Holdings, Inc.,* 516 B.R. 873, 887 (Bankr. W.D. Tex. 2014).

[5] First Am. Compl. at 5-6, ECF No. 45.

[6] First Am. Compl. at 6, ECF No. 45.

> (5) PRIMARY TERM: Subject to the terms and provisions below, this Assignment shall be for a term of three years from December 1, 2011 (hereinafter called "primary term") and as long thereafter as oil and/or gas, is produced from the Assigned Premises. Actual drilling operations on the Initial Well to be drilled or recompleted hereunder will begin by November 30, 2014.[7]

Another provision in the term lease assignments provided:

> Upon termination of all or part of this Assignment under Sections 5 and 6 above Assignee shall reconvey to Assignor by recordable written instrument the identical interest Assignee acquired from Assignor . . . Any time after Assignee has become obligated to reconvey such an interest in the assigned lease to Assignor, Assignor shall have the right to enter upon the Assigned Premises and conduct such operations as it deems necessary and said Assigned Premises shall no longer be subject to this Assignment, provided that Assignee shall not be relieved of any obligation or liability theretofore incurred as to the Assigned Premises and Assignee agrees to indemnify and hold Assignor harmless from any such obligation or liability.[8]

### B. The term extensions

One year later, Geronimo extended the primary term of the Crockett County lease assignments from three years from the effective date, December 1, 2011, to five years from the effective date.[9]

After the first extension, ASEN defaulted on a credit agreement, but was then able to negotiate new financing and avoided foreclosure. To satisfy one requirement of the new financing, on January 10, 2014 Geronimo again extended the leases owned by ASEN.[10] In the documents accomplishing the second extension, the language defining the primary term, section 5, was altered:

---

[7] Decl. Supp. Pls.' Compl. Exs. A-E at 2, §5, ECF No. 3.
[8] Decl. Supp. Pls.' Compl. Exs. A-E at 3, §10, ECF No. 3.
[9] Decl. Supp. Pls.' Compl. Ex. F at 1, ECF No. 3.
[10] Decl. Supp. Pls.' Compl. Exs. G-K, ECF No. 3.

(5) <u>PRIMARY TERM</u>: Subject to the terms and provisions below, this Assignment shall be for a term until December 31, 2017 *or the end of the primary term of the Base Lease set out in Exhibit "A," whichever is sooner,* (hereinafter called "primary term") and for so long thereafter as oil and/or gas is produced from the Assigned Premises.[11]

**C. The bankruptcy case.**

Seven months later, ASEN filed for voluntary relief under chapter 11 of the United States Bankruptcy Code.[12] The Crockett County leases were listed as property of ASEN on the schedules of assets and in the disclosure statement filed by ASEN.[13] On July 26, 2016, just under a year later, the reorganization plan was confirmed.[14] The plan included a "discharge injunction," which enjoined "all person who have held, hold, or may hold Claims or Interests" against the debtors.[15]

**D. Litigation in state court.**

About three months after confirmation, Geronimo entered into a lease assignment agreement with Amistad Energy Partners, LLC ("Amistad"), which included two of the five Crockett County leases.[16] When ASEN objected to this assignment, Geronimo sued ASEN in state court seeking a declaratory judgment that the term assignment to ASEN terminated and that ASEN breached the assignment contract by failing to reconvey the leases to Geronimo upon

---

[11] Decl. Supp. Pls.' Compl. Exs. G-K at 1, ECF No. 3. (emphasis added).
[12] *In re American Standard Energy Corp.*, No. 15-70104 (filed Aug. 3, 2015).
[13] *In re American Standard Energy Corp.*, No. 15-70104, Schedules at 9-11, ECF No. 77; Second Am. Disc. Stmt Ex. C at 12-13, ECF No. 268.
[14] *In re American Standard Energy Corp.*, No. 15-70104, Order Confirming Plan, ECF No. 383.
[15] *In re American Standard Energy Corp.*, No. 15-70104, Debtor's Second Amended Joint Plan of Reorganization, at 59 § 8.4(b), ECF No. 269.
[16] Decl. Supp. Pls.' Compl. Ex. L at 1, ECF No. 3.

4

termination.[17] In response to the state court suit, AESN filed this adversary proceeding arguing, in part, that it owns the leases and that Geronimo violated the discharge injunction by filing the state court declaratory judgment action.[18]

## II. ANALYSIS

### A. Bankruptcy Court jurisdiction over the termination theories.

Geronimo asserts that the Crockett County term assignments terminated based on two rather suspect theories: (1) there was lack of consideration with respect to the term extensions; and (2) the term assignments terminated upon the signing of the extensions themselves, based on the new language inserted into the extension document.[19] Either termination theory, if correct, would mean that: (1) ASEN breached the term assignments by failing to reconvey the leases to Geronimo after they terminated, and (2) Geronimo and XOG would be able to enter the land and "conduct such operations as [they] deem[ ] necessary. . . ."[20]

It is tempting to simply reach out and rule on the state law issue of whether the leases have terminated, given the facially suspect arguments advanced by Geronimo. However, the Court will resist that temptation because it, like all Federal Courts, is one of limited jurisdiction,[21] and unlike Article III courts, also has limited authority to enter final orders.[22] In

---

[17] Decl. Supp. Pls.' Opp'n Defs.' Mot. to Dismiss Ex. C, ECF No. 22 (Geronimo Holding Corporation and Randall Capps' First Amended Petition).
[18] Compl. at 13-14, ECF No. 1.
[19] Hr'g Tr. at 4-11, ECF No. 31.
[20] Decl. Supp. Pls.' Compl. Exs. A-E at 3, §10, ECF No. 3.
[21] *Kokkonen v. Guardian Life. Ins. Co. of America,* 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)).
[22] *Stern v. Marshall,* 131 S. Ct. 2594, 2600-01 (2011).

addition, what jurisdiction this Court does have is further limited by the fact that confirmation has happened.[23] Finally, Geronimo has requested abstention.[24] For all these reasons, the Court will limit its ruling to the bankruptcy issue of whether the litigation is barred by the discharge injunction.[25]

### B. Motions to Dismiss under Rule 12(b)(6)

Rule 12(b)(6) states that a party can move to dismiss if the pleading party fails to state a claim upon which relief can be granted.[26] Here, ASEN seeks a declaratory judgment that Geronimo violated the discharge injunction and the largely identical injunction in the plan,[27] by filing the state court lawsuit. If litigation to determine whether the lease assignments at issue have terminated is not a "claim," as defined in the Bankruptcy Code, then no relief can be granted, because there is no violation of the discharge injunction. Thus, the motion depends on the Bankruptcy Code's definition of "claim."

---

[23] *Bank of Louisiana v. Craig's Stores of Texas, Inc. (In re Craig's Stores of Texas, Inc.),* 266 F.3d 388, 390-91 (5th Cir. 2001).

[24] Defs.' Mot. for Abstention, ECF No. 24.

[25] ASEN has also argued that res judicata bars these theories. That argument will be decided by this Court after an evidentiary hearing.

[26] Fed. R. Bankr. P. 7012 (making Fed. R. Civ. P. 12 applicable in adversary proceedings). The Supreme Court's most recent decisions regarding pleading standards focus on the meaning of the second section of Rule 8. In applying the Supreme Court's decisions, the Fifth Circuit has stated: "Rule 8 does not demand 'detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Jabary v. City of Allen,* 547 Fed. Appx. 600, 604 (5th Cir.2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Thus, a plaintiff's claim must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). This plausibility standard is met where a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). With respect to any well-pleaded allegations "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 669.

[27] 11 U.S.C. § 524; *In re American Standard Energy Corp.*, No. 15-70104, Debtor's Second Amended Joint Plan of Reorganization, at 59 § 8.4(b), ECF No. 269.

**C. What is a "Claim"?**

The bankruptcy code defines "claim" as:

(A) [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or

(B) [a] right to an equitable remedy for breach of performance, *if such breach gives rise to a right of payment*, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[28]

The definition of claim is obviously broad in scope,[29] and meant to capture all remedies that give rise to a right to payment.[30] But there is one important limitation: the right to an equitable remedy for breach of performance where that breach does *not* give rise to monetary damages; this type of right will not be a claim, and will not be discharged.[31] For example, several courts have held that covenants not to compete are excluded from the definition of claim, and so are enforceable despite the discharge.[32] Thus, the key is to determine whether the breach gives rise to an equitable remedy that has a monetary damages alternative. And even if there is a

---

[28] 11 U.S.C. § 101(5) (emphasis added).

[29] *Kipp Flores Architects, LLC v. Mid-Continent Cas. Co.,* 852 F.3d 405, 410 (5th Cir. 2017). ("The definition of a "claim" in bankruptcy is extremely broad . . . .")

[30] *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991).

[31] *Sheeran v. Davis (In re Davis)*, 3 F. 3d 113, 116 (5th. Cir. 1993); *In re Hruby,* 512 B.R. 262, 267 (Bankr. D. Colo. 2014).

[32] *Kennedy v. Medicap Pharmacies, Inc.,* 267 F.3d 493, 496–97 (6th Cir. 2001) (dividing the cases that have held that a non-compete covenant is not dischargeable in bankruptcy into three categories: "[1] Some cases, relying on *Kovacs,* have held that the right is not a claim because compliance does not require the expenditure of money. [2] Others have held that the injunctive right is not a claim because it is available only if the remedy at law is inadequate and there is, therefore, no right to payment arising from the breach. [3] In some cases, the stay was lifted to permit a state court to determine whether monetary damages were adequate. If the state court found injunctive relief was appropriate, then injunctive relief was not construed by the bankruptcy court to be a claim. If the court found that a monetary award was adequate compensation and an injunction was therefore not appropriate, then the plaintiff's entire claim was discharged under 11 U.S.C. § 727(b))." (citations omitted).

monetary alternative, some courts have ruled that there is no claim where the monetary alternative is inadequate.[33]

The Supreme Court looked at the term "claim" in *Ohio v. Kovacs*.[34] There, Kovacs was enjoined to clean up a waste site, and subsequently filed for bankruptcy. The issue was whether the injunction obligation was a claim, and thus, subject to discharge.[35] The Court ruled that the obligation was a claim. In doing so, it affirmed the judgments of the courts below and their reasoning: Because Kovacs, an individual, could not personally clean up the environmental damage he caused, but rather, could only pay money to have it cleaned up, the obligation was a "claim."[36]

The Fifth Circuit has also stressed that the money damages must be an alternative to the equitable remedy. In *Sheerin v. Davis,* Sheerin had previously brought a state court lawsuit

---

[33] According to the Fifth Circuit: "[t]he ability of a debtor to choose between performance and damages in some cases is not the same as a debtor's liability for money damages for failing to satisfy an equitable obligation. While section 101(5)(B) encourages creditors to select money damages from among alternative remedies, it does not require creditors entitled to an equitable remedy to select a suboptimal remedy of money damages." *Sheeran v. Davis (In re Davis)*, 3 F. 3d 113, 116 (5th. Cir. 1993) (citation omitted). *See also, In re Indian River Estates, Inc.*, 293 B.R. 429, 434 (Bankr. N.D. Ohio 2003) (a party should not be required to "accept a monetary alternative if it is clearly not in proportion to the equitable remedy."); *Maids Int'l Inc. v. Ward (In re Ward),* 194 B.R. 703, 710-11 (Bankr. D. Mass. 1996) (discussing why it can be difficult to say a remedy at law should substitute for a remedy at equity).

[34] *Ohio v. Kovacs,* 469 U.S. 274, 278-281 (1985). The Court refers to the history surrounding the passage of the Bankruptcy Reform Act. It notes the original definition of "claim" would have been broader, in that equitable remedies of any kind would be a claim. The eventual bill led to a compromise, which is reflected in a quote from the Congressional Record. What is now section 101(5)(B) "is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11." 124 Cong. Rec. 32393 (1978) (remarks of Rep. Edwards).

[35] *Kovacs,* 469 U.S. at 277.

[36] *Id*. at 281.

8

against Davis for freezing him out of their business partnership.[37] Sheerin won a judgment of both monetary and equitable remedies.[38] Davis then filed for bankruptcy and attempted to discharge the judgment, which included the equitable remedies of reformation, resulting trust, and partition in kind.[39] The court "examine[d] the disputed remedies to determine if alternative remedies of money damages exist[ed]."[40] The court determined that, based on either Texas law or the findings made by the Texas state trial court, money damages were not available as alternatives to the equitable remedies.[41] Based on this, the court held that the equitable remedies were not claims that could be discharged in bankruptcy.[42]

Also excluded from the scope of the term "claim" are covenants running with the land, even where the covenant requires the payment of money. For example, in *Beeter v. Tri-City Property Management Services*, the debtors argued that their homeowner's association violated the automatic stay and discharge injunction by attempting to collect post-petition assessments.[43] In response, the homeowner's association argued that the obligations at issue were not "claims."[44] This Court agreed with the homeowner's association and held that obligations under covenants that run with the land are not claims.[45] In explaining its decision, this Court said: "The 'benefits' cannot be 'rejected' [like an executory contract] because they are not a function of performance by a party to a contract, but an essential attribute of the estate in land that the owner

---

[37] *Sheerin v. Davis (In re Davis),* 3 F.3d 113, 114 (5th Cir. 1993).
[38] *Id.*
[39] *Id.* at 116.
[40] *Id.*
[41] *Id.* at 117.
[42] *Id.*
[43] *In re Beeter*, 173 B.R. 108, 112 (Bankr. W.D.Tex. 1994).
[44] *Id.*
[45] *Id.* at 122-23.

acquires when she purchases the condominium."[46] Similarly, the Fourth Circuit has said that the obligation to pay homeowner's dues "is a function of owning the land with which the covenant runs."[47]

### C. The Remedies under the Term Assignments.

The term assignments in favor of ASEN provide that if the assignment has terminated, as Geronimo contends in the lawsuit, Geronimo has two remedies. The first is that Geronimo has the right to a reconveyance of the leases from ASEN.[48] An obligation to reconvey a lease is a binding covenant that runs with the land.[49] A restrictive covenant that creates a non-monetary obligation that attaches to a property interest is not a "claim" under the Bankruptcy Code.[50] Even if the obligation to reconvey the leases created a monetary obligation, that obligation would still not be a "claim" because it comes from a covenant that runs with the land (like the homeowners association dues in *Beeter*). Geronimo's right to reconveyance could also be characterized as a right to specific performance, which is also not a claim because damages are not an adequate alternative.[51]

The other remedy afforded Geronimo in section 10 of the term assignment is the right to enter upon the land and conduct the activities of the lessee under the base leases. To exercise this

---

[46] *In re Beeter*, 173 B.R. 108, 116 (Bankr. W.D.Tex. 1994).
[47] *In re Rosenfeld*, 23 F. 3d 833, 837 (4th Cir. 1994).
[48] Decl. Supp. Pls.' Compl. Exs. A-E at 3, §10, ECF No. 3.
[49] *Gould v. Schlachter,* 443 S.W.2d 764, 765 (Civ. App. Tex.—Eastland 1969, no writ.).
[50] *In re TOUSA, Inc.* 393 B.R. 920, 922 (Bankr. S.D. Fla. 2008) ("[A] restrictive covenant [that] creates a non-monetary property interest . . . is not a 'claim'. . . .")
[51] *Sheerin v. Davis (In re Davis)*, 3 F. 3d 113, 116 (5th Cir. 1993) (holder of an equitable remedy need not accept "suboptimal" remedy of damages); *Crafts v Pitts,* 162 P.3d 382, 388 (Wash. 2007) (damages are "presumed" an inadequate alternative to specific performance); *In re Ben Franklin Hotel Ass*. 186 F.3d 301, 307-309 (3d Cir. 1999) (no claim where money damages are not an alternative to equitable remedy).

10

right, Geronimo seeks possession of the leases exclusive of any right of ASEN, which is similar to the right to compete free of someone who has signed a covenant not to compete. As previously noted, numerous courts have found that covenants not to compete are not claims.[52]

What section 10 of the term assignments does not provide is a damages remedy, and ASEN has cited no compelling authority to suggest that a damages remedy is available.[53] Therefore, the lawsuit seeking to declare that the term assignments have terminated and that ASEN is obligated to reconvey the leases is not a "claim" under the Bankruptcy Code, and is not barred by the discharge injunction.

## III. CONCLUSION

The motion to dismiss for failure to state a claim is granted, in part.

---

[52] See the cases cited in *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 496–97 (6th Cir. 2001).

[53] What cases it did cite are not persuasive. In *Blake v. Edge Petroleum Corp. (In re Edge Petroleum Corp.),* Adv No. 10-2007, 2010 WL 3619937, at *4 (Bankr. S.D. Tex. Sept. 10, 2010), there was no analysis of whether there was an alternate right to money damages, and it appeared that damages were most of the relief sought. In *Robbins v. Amoco Production Co.,* 952 F.2d 901, 906-08 (5th Cir. 1992), there was no analysis of the "claim" issue. *In re Vodenos,* 553 B.R. 786, 788 (Bankr. C.D. Cal. 2016) involved a quiet title issue, but the quiet title was based on a contract claim, so there may have been a damages remedy. In any event, there was no discussion of the "claim" issue.